**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAWRENCE O. ANSLEY,** | : | **CIVIL ACTION NO. 1:21-CV-528** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **SECRETARY JOHN E. WETZEL**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Plaintiff Lawrence Ansley ("Ansley"), a state inmate in the custody of the Pennsylvania Department of Corrections, commenced this action pursuant to 42 U.S.C. § 1983 setting forth various causes of action.  (Doc. 1).  Named as defendants are, *inter alia*, Secretary John Wetzel, Superintendent Robert Marsh, Superintendent Thomas McGinley, Grievance Coordinator J. Burd, Unit Manager Urbanick, Psychologist Ms. Brocca, Psychologist Mr. Snedden, Psychologist Ms. Shultz, Psychologist Ms. Learn, Major Foulds, Captain Burns, Grievance Coordinator Ms. Kelley, Officer Beesley, Officer Long, and Sergeant Weeks (collectively, "defendants").  Before the court is defendants' Rule 12(b) motion (Doc. 23) to partially dismiss the complaint.  For the reasons set forth below, the motion will be granted in part and denied in part.

**I.    <u>Factual Background & Procedural History</u>**

On January 18, 2020, Ansley was transferred from the State Correctional Institution at Camp-Hill ("SCI-Camp Hill") to the State Correctional Institution at Benner ("SCI-Benner") and was immediately placed in the Restricted Housing Unit

("RHU").  (Doc. 1 ¶ 1).  On January 25, 2020 Ansley saw the Program Review Committee ("PRC") where they elected not to transfer Ansley to general population and refused to allow him access to his electronics.  (Id. ¶ 2).

On February 11, 2020, Deputy Booher allegedly kicked Ansley's door and told him he would not be leaving the RHU and that he planned to prevent him from being released on parole.  (Id. ¶ 3).  In March 2020, Ansley's family deposited approximately $350.00 into his inmate account.  (Id. ¶ 4).  Lieutenant Stavola allegedly told Ansley he was "watching his account" and accused Ansley of being a drug dealer and gang leader.  (Id. ¶¶ 4-5).  Lieutenant Stavola also allegedly claimed that he planned to prevent Ansley from obtaining parole.  (Id. ¶ 6).

Thereafter, Ansley was transferred to general population where he was purportedly forced to share a cell with another inmate who was dealing and doing drugs.  (Id. ¶ 7).  Ansley requested a cell change to defendant Urbanick and later to defendant Marsh; both refused to transfer him.  (Id. ¶¶ 7-8).

In June 2020, Ansley wrote an email to his sister and expressed suicidal thoughts due to the erratic behavior of his cellmate.  (Id. ¶ 9).  His email was flagged, and he was treated by defendants Snedden and Brocca, the prison psychologists.  (Id. ¶ 10).  Ansley alleges that defendants Snedden and Brocca refused to recommend a cell change to defendant Urbanick, despite his suicidal ideations.  (Id. ¶¶ 9-11).

During the second week of June, 2020, Lieutenant Stavola searched Ansley's cell and found a stolen television and a bag of wine.  (Id. ¶ 12).  Ansley alleges that

Lieutenant Stavola "pretended" not to recognize his cellmate's drugs.  (Id.)  Ansley contends that his cellmate did not receive a misconduct.  (Id.)  Instead, two weeks later, Lieutenant Stavola showed Ansley's cellmate the letters Ansley had written requesting a cell change, placing him in "extreme danger."  (Id. ¶ 13).  Ansley also alleges that his cellmate and Lieutenant Stavola created a "rape plot" to place in Ansley's file to keep him from obtaining parole.  (Id. ¶ 14).  On June 25, 2020, Ansley was placed in the RHU and Lieutenant Stavola allegedly reiterated his intent to prevent Ansley from obtaining parole.  (Id. ¶¶ 15-16).

On July 14, 2020, Ansley again saw the PRC and Deputy Booher denied his request for the return of his electronics.  (Id. ¶ 17).  He saw Psychologist Specialist, Ms. Learn, who allegedly did not provide him with adequate help for his suicidal thoughts.  (Id. ¶ 18).  Ansley went on a hunger strike for two weeks until he was given his electronics.  (Id.)  On July 31, 2020, Ansley was interviewed by a parole board member and was ultimately denied parole on August 4, 2020.  (Id. ¶¶ 19-20).  Ansley believes he was denied parole because of the "rape plot" that Stavola, Booher, and his former cellmate allegedly placed in his file.  (Id.)

On September 16, 2020, Ansley was transferred from SCI-Benner to the State Correctional Institution at Coal Township ("SCI-Coal Township").  (Id. ¶ 21).  Ansley alleges that individuals at SCI-Benner stole his tablet and that Unit Manager Dunn refused to give him an identification, clothes, and a cable cord.  (Id. ¶¶ 22, 24).  On September 23, 2020, Ansley was placed in a psychiatric observation cell for twelve hours, and then returned to Dunn's housing unit.  (Id. ¶ 23).

On October 2, 2020, Ansley again reported thoughts of suicide and met with Psychologist Specialists.  (Id. ¶ 24).  While speaking with the Psychologist Specialists, Unit Manager Dunn allegedly interrupted the meeting and stated that Stavola had included the "rape plot" in Ansley's file and that he had 26 other sexual assault misconducts, so he would always be on Dunn's block.  (Id. ¶¶ 24-27).  Ansley reportedly wrote to defendant Wetzel and informed him that he was not safe with Dunn.  (Id. ¶ 28).  Defendant McGinley was also "made aware," but Ansley alleges that defendant McGinley is Dunn's "best friend" and would not intervene.  (Id. ¶ 29).  In late October, 2020, defendant Foulds allegedly told Ansley to withdraw the grievance against Dunn.  (Id. ¶ 30).

On January 9, 2021, Ansley was overheard making inappropriate comments about a staff member, and defendant Long issued a misconduct against him and placed him in the RHU.  (Id. ¶ 31).  On January 10, 2021, defendant Weeks, who was allegedly having an "affair" with defendant Long, inventoried Ansley's property. (Id. ¶¶ 31-32).  Ansley claims that his property went missing and was damaged.  (Id. ¶ 32).  On January 20, 2021, Ansley's property arrived in the RHU, but certain items were still missing.  (Id. ¶ 33).  He notified defendant McGinley and filed a grievance about the missing property.  (Id. ¶¶ 34, 36).  The grievance was upheld in part.  (Id. ¶ 36).

On January 30, 2021, Ansley asked defendant Beesley for a second book from the RHU library cart.  (Id. ¶ 35).  Defendant Beesley denied his request and

allegedly stated that he "didn't know rapists knew how to read." (<u>Id.</u>)  Ansley filed a grievance and wrote to defendant Wetzel about this comment.  (<u>Id.</u>)

On March 4, 2021, Ansley was released from the RHU.  (<u>Id.</u> ¶ 37).  However, on March 6, 2021, he returned to the RHU.  (<u>Id.</u>)  On March 7, 2021, security officers searched his cell and confiscated his legal complaint and exhibits related to this lawsuit.  (<u>Id.</u>)  The following day, Ansley was released from the RHU.  (<u>Id.</u>)

Ansley alleges that, on March 16, 2021, staff at SCI-Coal Township stole from him.  (<u>Id.</u> ¶ 38).  He asserts that he ordered items from the commissary on January 8 and money was deducted from his account, but he never received the commissary items because he was in the RHU.  (<u>Id.</u>)  Defendant Kelley, the grievance coordinator, dismissed the issue.  (<u>Id.</u>)

Defendants move to partially dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 23).  The motion is fully briefed and ripe for resolution.

## II.   <u>Legal Standard</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007) (quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is

generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); <u>see also</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." <u>Phillips v. Cty. of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  <u>See Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  <u>Id.</u>; <u>see also</u> <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief."  <u>Iqbal</u>, 556 U.S. at 679 (citing <u>Twombly</u>, 550 U.S. at 556); <u>Twombly</u>, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678.

## III.   Discussion

### A.   Claims pursuant to 42 U.S.C. §§ 1981, 1985, and 1986 and the Equal Protection Clause, and claims against defendants Schultz, Learn, and Foulds

Ansley concedes that his claims brought pursuant to 42 U.S.C. §§ 1981, 1985, and 1986 and his equal protection theory should be dismissed.  (Doc. 38 at 2-3, 8, 10, 15).  He also moves to voluntarily dismiss the claims against defendants Schultz, Learn, and Foulds.  (Id. at 18).  Therefore, defendants' motion will be granted with respect to the §§ 1981, 1985, and 1986 claims, the equal protection claim, and the claims against defendants Schultz, Learn, and Foulds.

### B.   Official Capacity Claims

Defendants argue that any claims seeking monetary damages against them in their official capacities are barred by the Eleventh Amendment.  (Doc. 25 at 16).  Personal capacity suits under section 1983 seek to recover money from a government official, as an individual, for acts performed under color of state law.  Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988).  Official capacity suits, in contrast, generally represent an action against an entity of which the government official is an agent.  Id.; see also Monell v. Dep't of Social Servs., 436 U.S. 658, 690 n. 55 (1978).  When suits are brought against state officials in their official capacities, those lawsuits are treated as suits against the state.  Hafer v. Melo, 502 U.S. 21, 25 (1991).  However, the doctrine of sovereign immunity, established by the Eleventh

Amendment, protects states, such as the Commonwealth of Pennsylvania, from suits by citizens.  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100-01, 117 (1984); Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996); Lavia v. Pennsylvania, 224 F.3d 190, 195-96 (3d Cir. 2000).  That immunity runs to state officials if they are sued in their official capacity and the state is the real party upon which liability is sought.  Scheuer v. Rhodes, 416 U.S. 232, 237-38 (1974).  Congress has not abrogated the immunity regarding Ansley's claims, nor has Pennsylvania waived this grant of immunity.  See 42 PA. C.S.A. § 8521(b).  Consequently, Ansley's claim for money damages against the defendants in their official capacities is barred by sovereign immunity.  See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 (3d Cir. 2010).

 C.  **42 U.S.C. § 1983 Claim**

  Next, defendants move to dismiss all claims against Wetzel, Marsh, McGinley, Burns, Kelley, Brocca, Snedden, Urbanick, Beesley, Long, Weeks, and Burd based on their lack of personal involvement in the alleged constitutional violations.  (Doc. 25 at 17-21).  Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior."  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode,

845 F.2d at 1207-08; see also Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003).  Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible.  Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08.  Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement.  Rode, 845 F.2d at 1208.

      1.     ***Defendants Wetzel, Marsh, McGinley, Burns, Urbanick, and Kelley***

It appears that Ansley seeks to hold defendants Wetzel, Marsh, McGinley, Burns, and Urbanick liable based solely upon their failure to respond to his letters. (Doc. 1 ¶¶ 2, 8, 11, 28, 29, 34, 35; Doc. 38 at 14).  Ansley also seeks to hold defendant Kelley liable based on her role as grievance coordinator.  (Doc. 1 ¶ 38).  It has long been recognized that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond, to a prisoner's complaint or grievance, is insufficient to establish personal involvement in the underlying unconstitutional conduct.  See Rode, 845 F.2d at 1207-1208 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) (nonprecedential) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right"); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential) (holding that

allegations that prison officials and administrators responded inappropriately, or
failed to respond to a prison grievance, did not establish that the officials and
administrators were involved in the underlying allegedly unconstitutional
conduct).[1]  In accordance with the foregoing, any attempt by Ansley to establish
liability against defendants Wetzel, Marsh, McGinley, Burns, Urbanick, and Kelley
based upon their handling of Ansley's complaints or administrative grievances does
not support a constitutional claim.  Accordingly, these defendants will be dismissed
from this action.

Additionally, to the extent that Ansley attempts to hold defendants Marsh
and McGinley liable based on their respective supervisory roles of Superintendent,
this claim also fails.  It is well-established that officials may not be held liable for
unconstitutional conduct of their subordinates under a theory of *respondeat
superior*.  See Rode, 845 F.2d at 1207.  Accordingly, insofar as Ansley's claims
against defendants Marsh and McGinley rely on a *respondeat superior* theory of
liability, they are entitled to dismissal on this ground.

### 2. *Defendants Brocca and Snedden*

With respect to defendants Brocca and Snedden, Psychologist Specialists,
Ansley alleges that they refused to talk to the unit manager about effectuating a cell
move.  (Doc. 1 ¶ 10).  By failing to request a cell move, Ansley alleges that
defendants Brocca and Snedden failed to protect him from harm.  (Doc. 38 at 14).

---

[1] The court acknowledges that nonprecedential decisions are not binding
upon federal district courts.  Citations to nonprecedential decisions reflect that the
court has carefully considered and is persuaded by the panel's *ratio decidendi*.

Construing the complaint liberally, these allegations are sufficient to establish the personal involvement of defendants Brocca and Snedden. The motion to dismiss will be denied with respect to these defendants.

### 3.   *Defendants Beesley, Long, and Weeks*

In the complaint, Ansley alleges that he asked defendant Beesley for a second book from the RHU library cart, but Beesely denied his request, and made a rude comment. (Id. at ¶ 35). Defendant Beesley's denial of a book and his comment to Ansley, without any accompanying physical injury, does not amount to malicious behavior violative of the Eighth Amendment. See Dunbar v. Barone, 487 F. App'x 721, 723 (3d Cir. 2012) (nonprecedential) ("[V]erbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment."). Therefore, defendant Beesley is entitled to dismissal from this action based on lack of personal involvement in the violation of Ansley's constitutional rights.

As to the claims against defendants Weeks and Long, Ansley asserts that he made an inappropriate comment about defendant Weeks and that defendant Long overheard the comment. (Doc. 1 ¶ 31). Defendant Long then issued a fabricated misconduct against Ansley. (Id.; Doc. 38 at 14-15). Ansley further alleges that defendant Weeks inventoried his property, his property was subsequently damaged, and Weeks is responsible for the missing property. (Doc. 1 ¶ 32; Doc. 38 at 14-15). Accepting these allegations as true, the court concludes that Ansley has adequately asserted personal involvement sufficient to withstand scrutiny on a Rule

12(b) motion.  The motion to dismiss the claims against Weeks and Long will be denied.

### 4. *Defendant Burd*

A review of the complaint confirms that there are no allegations against defendant Burd.  (Underline See Doc. 1).  Ansley does not allege, in any way, that defendant Burd was involved in the violation of his constitutional rights.  In his brief in opposition to defendants' motion to dismiss, Ansley alleges that defendant Burd is the "primary grievance holder" at SCI-Benner.  (Doc. 38 at 15).  As stated *supra*, Ansley cannot impose liability on defendant Burd based upon her role in reviewing and responding to grievances.  Ansley has thus failed to allege sufficient facts to establish that defendant Burd had any personal involvement in the violation of his rights, and she will be dismissed from this action.

### D. State Law Defamation Claim

Ansley also alleges a claim of defamation against defendants Dunn, Stavola, Booher, and Beesely in connection with references they made to Ansley's purported history of sexual misconduct.  (Doc. 1 ¶¶ 19, 25-27, 35).  Under Pennsylvania law, Ansley must plead seven elements to state a claim for defamation: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its

publication; and (7) abuse of a conditionally privileged occasion.  42 PA. CONS.

STAT. ANN. § 8343(a).

"Defamation is a communication which tends to harm an individual's

reputation so as to lower him or her in the estimation of the community or deter

third persons from associating or dealing with him or her."  Elia v. Erie Ins.

Exchange, 634 A.2d 657, 660 (Pa. Super. Ct. 1993) (citing Zartman v. Lehigh Cnty.

Humane Soc., 482 A.2d 266 (Pa. Super. Ct. 1984)).  Under Pennsylvania law, "only

statements of fact can support an action for libel or slander, not merely expressions

of opinion."  Id. (citations omitted).  "Whether a particular statement or writing

constitutes fact or opinion is a question of law for the court", id. (citation omitted),

and whether a challenged statement is capable of defamatory meaning is a question

of law for the court to determine in the first instance.  Feldman v. Lafayette Green

Condominium Ass'n, 806 A.2d 497, 500 (Pa. Commw. Ct. 2002) (citing Kryeski v.

Schott Glass Tech., 626 A.2d 595 (Pa. Super. Ct. 1993)).  "In making this

determination, we view the statement in its factual context, because the key in

determining defamatory meaning is the effect the statement would produce on its

intended audience."  Id. (citation omitted).

Ansley alleges that defendants Dunn, Stavola, and Booher made references

to his history of sexual assault, harassment, and attempted rapes, and that

defendant Beesley stated that he "didn't know rapists knew how to read."  (Doc. 1

¶¶ 19, 25-27, 35).  Defendants assert, as a defense, the truth of the references and

state that Ansley's history of sexual assault, harassment, and attempted rapes are in

his misconduct file.  (Doc. 25 at 23).  In response, Ansley denies that he has a "rape history."  (Doc. 38 at 15).  It is well-established that truth is an absolute and complete defense to a defamation claim and a defendant need only show substantial, rather than complete, truth.  See Pacitti v. Durr, 310 F. App'x 526, 528 (3d Cir. 2009) (nonprecedential) (citing Bobb v. Kraybill, 354 Pa. Super. 361, 511 A.2d 1379, 1380 (1986)).  While defendants' argument is compelling, the resolution of the substantial truth of these references is not appropriate on a Rule 12(b) motion to dismiss because it takes the court beyond the pleadings.  The court will deny defendants' motion to dismiss the defamation claim against defendants Dunn, Stavola, and Booher.

With respect to defendant Beesley's statement that he "didn't know rapists knew how to read," we find that this statement is not capable of defamatory meaning.  Even if this is a statement of fact, and not mere opinion, there are no allegations that defendant Beesley published the statement, a recipient understood its defamatory meaning, special harm resulted to Ansley, or there was abuse of a conditional privilege.  The court will dismiss the defamation claim against defendant Beesley.

## IV.  **Leave to Amend**

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit Court of Appeals has

admonished that when a complaint is subject to dismissal for failure to state a claim,

courts should liberally grant leave to amend "unless such an amendment would be

inequitable or futile."  <u>Phillips</u>, 515 F.3d at 245 (citing <u>Alston v. Parker</u>, 363 F.3d 229,

235 (3d Cir. 2004)).  The official capacity claims and the claims against defendants

Wetzel, Marsh, McGinley, Burns, Urbanick, Kelley, Beesley, and Burd are legally

and factually flawed.  Therefore, the court concludes that curative amendment with

respect to these claims would be futile.

V.   <u>Conclusion</u>

Defendants' partial motion (Doc. 23) to dismiss will be granted in part and

denied in part.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:        March 7, 2022