## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAWRENCE O. ANSLEY,** | : | **CIVIL ACTION NO. 1:21-CV-528** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **SECRETARY JOHN E. WETZEL,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## **MEMORANDUM**

Plaintiff Lawrence Ansley ("Ansley"), an individual formerly incarcerated with the Pennsylvania Department of Corrections ("DOC"), commenced this action pursuant to 42 U.S.C. § 1983 setting forth several causes of action against the defendants.[1]  (Doc. 1).  Remaining defendants are Deputy Booher, Psychologist Ms. Brocca-McCoy, Unit Manager Dunn, Officer Long, Officer Martz, Officer Shultz, Psychologist Mr. Snedden, Psychologist Ms. Stavola, and Sergeant Weeks.  Before the court is defendants' Rule 56 motion (Doc. 117) for summary judgment.  For the reasons set forth below, the court will grant the motion.

---

[1] Ansley has been transferred to GEO Chester reentry center.  (See Doc. 134).

I.   <u>**Factual Background & Procedural History**</u>[2]

On March 23, 2021, Ansley filed his original complaint.  (Doc. 119 ¶ 1; Doc. 124 ¶ 1).  He subsequently filed two supplemental complaints with newly named defendants and claims.  (<u>Id.</u> ¶ 2).  Defendants moved to partially dismiss the original complaint on June 28, 2021 and moved to dismiss the supplemental complaint on November 23, 2021.  (<u>Id.</u> ¶ 3).  On March 7, 2022, defendants' partial motion to dismiss the original complaint was granted in part and denied in part.  (<u>Id.</u> ¶ 4).  In that order, the court dismissed all claims brought pursuant to 42 U.S.C. §§ 1981, 1985, and 1986, and the Equal Protection Clause, and terminated defendants Beesley, Burd, Burns, Foulds, Kelley, Learn, Marsh, McGinley, Shultz, Urbanick, and Wetzel from this action.  (<u>Id.</u> ¶¶ 5, 6).  The court later granted defendants' motion to dismiss the supplemental complaint and terminated defendants Bellas, Dietrech, Innis, Moser, Nietz, and Radziewicz.  (<u>Id.</u> ¶ 7).  On July 11, 2023, defendant Botscheller was dismissed from this action.  (Docs. 132, 133).

---

[2]   Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  Local Rule of Court 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  <u>Id.</u>  Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts.  (Docs. 119, 124).  To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

The remaining claims in this action are Ansley's retaliation, cruel and unusual punishment, failure to protect, due process, and defamation claims against Booher, Brocca-McCoy, Dunn, Long, Martz, Shultz, Snedden, Stavola, and Weeks. The relevant facts material to these claims are as follows.

On February 25, 2020, Ansley was seen by the Program Review Committee ("PRC") at the State Correctional Institution at Benner Township, Pennsylvania ("SCI-Benner Township). (Doc. 119 ¶ 10; Doc. 124 ¶ 10). Defendants assert that during the PRC meeting, Ansley was advised that he must be reviewed by the Security Office to obtain a recommendation about his housing placement. (Id. ¶ 11). In response, Ansley contends that defendants Booher and Stavola threatened him, and he was never told that he could appeal his Level 5 housing placement.[3] (Doc. 124 ¶¶ 11, 12). On or about April 22, 2020, Ansley was approved to be released to general population by the Security Office. (Doc. 119 ¶ 12).

In May 2020, Ansley submitted an application for parole to the Board of Probation and Parole. (Id. ¶ 13). The Board placed his application on the July 2020 docket. (Id.) The parole packet submitted to the Board included a vote sheet that had been circulated to determine the Department's position on Ansley's application. (Id. ¶ 14). Notably, Superintendent Marsh opposed Ansley's application. (Id. ¶ 15).

---

[3] Level 5 involves the highest level of security and control. See Department Policy 11.2.1, Reception and Classification, Glossary, available at https://www.cor.pa.gov (last accessed August 31, 2023).

When Ansley was first housed in general population at SCI-Benner Township, prison staff placed him in a cell with an inmate named Almonte. (Doc. 119 ¶ 16). Ansley contends that inmate Almonte was a security informant, mentally unstable, regularly drank and used drugs, and threatened Ansley. (Doc. 124 ¶ 16). Ansley purportedly became overwhelmed by Almonte's behavior, and in June of 2020, he sent an email to his sister containing suicidal ideations. (Doc. 1 ¶ 9). On June 14, 2020, defendant Snedden treated Ansley due to the flagged email. (Doc. 119 ¶ 17). Ansley denied suicidal ideations and stated that he was just venting. (Id.) Less than two weeks later, on or about June 25, 2020, Ansley was transferred to a Psychiatric Observation Cell ("POC") after verbalizing suicidal ideations. (Doc. 119 ¶ 18). Ansley asserts he was placed in the hole without notice and "stated that he was going to kill himself while he was in the hole." (Doc. 124 ¶ 18).

Also, on or about June 25, 2020, inmate Almonte met with his parole agent. (Doc. 118-2 at 4 ¶ 13). During this meeting, Almonte informed his parole agent that Ansley stated that he wanted to rape a female sergeant. (Id.) As a result of this statement, the SCI-Benner Township Security Office was notified and subsequently launched an investigation. (Doc. 119 ¶ 19). Security staff concluded that there was insufficient evidence to issue a misconduct against Ansley, however, prison officials submitted a request to transfer Ansley to a different correctional facility. (Id. ¶ 20). The parties dispute whether the details of this security investigation were mentioned in Ansley's parole packet. (Doc. 119 ¶ 21; Doc. 124 ¶ 21). On August 4, 2020, the Board denied Ansley parole. (Id. ¶ 22).

4

On September 16, 2020, Ansley was transferred to the State Correctional Institution at Coal Township, Pennsylvania ("SCI-Coal Township").  (Id.)  Upon his arrival at SCI-Coal Township, prison officials placed Ansley on defendant Dunn's housing unit.  (Id. ¶ 23).  Ansley asserts that defendant Dunn called him a rapist in the presence of staff and other inmates.  (Doc. 124 ¶ 24).  On October 2, 2020, Ansley filed grievance number 892950 concerning defendant Dunn's comments.  (Doc. 119 ¶ 24; Doc. 124 ¶ 24).  Ansley later withdrew this grievance because three prison officials advised him that, due to the sexual nature of his complaint, the matter must be pursued through the Prison Rape Elimination Act ("PREA").  (Id. ¶ 25; Doc. 118-3 at 2).

Several months later, on January 9, 2021, Ansley avers that he made a comment about defendant Long and she issued a misconduct against him.  (Doc. 1 ¶ 31; Doc. 119 ¶ 27).  As a result of the misconduct, Ansley was transferred to the restricted housing unit ("RHU").  (Doc. 119 ¶ 29).  As Ansley was being transferred to the RHU, defendant Weeks inventoried and packed Ansley's property.  (Id.)  When Ansley later received his property, he contends that several personal items were missing.  (Doc. 1 ¶ 33).  On January 18, 2021, Ansley filed grievance number 911686 concerning his missing property.  (Doc. 119 ¶ 29).

In March of 2021, defendants Shultz and Martz searched Ansley's cell.  (Id. ¶ 30).  Ansley asserts that Shultz and Martz confiscated his legal paperwork during this cell search.  (Doc. 124 ¶ 30).  Ansley filed grievance number 918908 related to the confiscated paperwork.  (Doc. 119 ¶ 31; Doc. 124 ¶ 31).

5

Defendants first move for summary judgment based on Ansley's failure to properly exhaust his remaining claims.[4]  (Doc. 118 at 12-15).  Alternatively, defendants argue that they should prevail on the merits of the claims.  (Id. at 15-21).  The motion is ripe for resolution.[5]  Because we find that Ansley failed to satisfy the exhaustion requirement, we do not reach the merits of his claims.

II.    **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).  This

---

[4]  In accordance with Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018), the court placed the parties on notice that it would consider exhaustion in its role as fact finder and afforded them the opportunity to be heard under Small v. Camden Cty., 728 F.3d 265 (3d Cir. 2013).  (Doc. 128).

[5]  Ansley's brief in opposition to defendants' motion for summary judgment contains factual allegations that are not expressly set forth in the complaint.  (See Doc. 123).  The court may not consider such allegations because a complaint cannot be amended by way of an opposition brief.  See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed.  <u>See</u> <u>Pappas</u>, 331 F. Supp. 2d at 315.

III.   **<u>Discussion</u>**

Defendants seek an entry of summary judgment based on Ansley's failure to properly exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  (Doc. 118 at 12-15).  Under the PLRA, a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions.  <u>See</u> 42 U.S.C. § 1997e(a); <u>Booth v. Churner</u>, 206 F.3d 289, 291 (3d Cir. 2000).  Section 1997e(a) establishes the requirement of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002).  It has been made clear that the exhaustion requirement is mandatory.  <u>See</u> <u>Williams v. Beard</u>, 482 F.3d 637, 639 (3d Cir. 2007); <u>see</u> <u>also</u> <u>Booth v.</u>

Churner, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." Nyhuis, 204 F.3d at 73 (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies, an inmate must comply with all applicable grievance procedures and rules. Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. Spruill, 372 F.3d at 227-32; see also Nyhuis, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. Spruill, 372 F.3d at 227-32; see also Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000).

The Department of Corrections has an Inmate Grievance System, set forth in DC-ADM 804, which permits any inmate to seek review of problems that may arise during the course of confinement. See 37 PA. CODE § 93.9(a); PA. DEP'T OF CORR., No. DC-ADM 804, available at https://www.cor.pa.gov (last accessed August 31, 2023). After an attempt to resolve any problems informally, an inmate may submit a written grievance to the Facility's Grievance Coordinator for initial review. See DC-ADM 804. This must occur within fifteen days after the events upon which the claims are based. Id. Within fifteen days of an adverse decision by the Grievance

8

Coordinator, an inmate may then appeal to the Facility Manager of the institution. Id. Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). Id. An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. See Booth, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance review process).

"An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016) (quoting § 1997e(a)). Administrative remedies are considered unavailable if: (1) they "operate[ ] as a simple dead end"; (2) they are "incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." See id. at 643-44. This is not such a case. To the contrary, the record establishes that Ansley had full and ready access to the administrative remedy process.

With regard to remaining claims in the complaint, Ansley first filed grievance number 892950, dated October 2, 2020, concerning his interaction with the Psychology Department at SCI-Coal Township. (Doc. 118-3 at 3-4). The grievance explains that Ansley was experiencing anxiety and conferred with defendant Shultz and other members of the Psychology Department, as well as defendant Dunn. (Id.) Ansley took issue with defendant Dunn's presence at the meeting. (Id.) He claims

9

that Dunn then "loudly berate[ed]" him in front of other inmates, and called him a sexual deviant, a liar, and a rapist.  (Id.)  Ansley contends that Dunn's lies and false accusations placed his life in danger and could interfere with his ability to obtain parole.  (Id.)  For relief, Ansley sought transfer out of the DOC, and monetary relief for defamation, cruel and unusual punishment, and racial discrimination.  (Id. at 4).  On October 24, 2020, Ansley withdrew the grievance.  (Id. at 2).

Ansley next filed grievance number 893866 on October 6, 2020, concerning denial of his request for employment at SCI-Coal Township due to his status as an H-code inmate.  (Doc. 118-4 at 6).  He explains that he was classified as an H-code inmate because "the security team at Benner falsified reports claiming that [he] had a plan to rape [his] female block sgt."  (Id.)  Ansley sought monetary relief and immediate release from the DOC for false reports, abuse of authority, endangering his life, and deprivation.  (Id.)  The Grievance Officer denied the grievance on initial review, stating that "[t]he H code was temporarily placed on [Ansley] by staff at SCI Coal Twp. not staff at SCI Benner Twp.  An administrative review of the H code is being conducted at SCI Coal Twp., not SCI Benner Twp."  (Id. at 5).  Several months later, on March 13, 2021, Ansley filed an appeal to the SOIGA.  (See id. at 2).  The SOIGA dismissed the appeal because Ansley failed to first appeal the grievance to the Facility Manager.  (Id.)  Ansley then returned to the institution level and submitted an appeal to the Facility Manager on May 3, 2021.  (Id. at 4).  Therein, he alleges that defendant Dunn called him a rapist and a liar—allegations that were not included in the initial grievance, number 893866.  (Id.)  On May 28, 2021, the

Facility Manager dismissed the appeal as untimely and not filed in accordance with Department policy and procedures.  (Id. at 3).  Ansley did not appeal this decision.

On January 18, 2021, Ansley filed his third relevant grievance—number 911686—concerning missing property following his transfer to the RHU on January 10, 2021.  (Doc. 118-5 at 6).  He explains that he failed to receive his property within seventy-two hours of his transfer to the RHU.  (Id.)  Ansley sought monetary compensation for cruel and unusual punishment, deliberate indifference, and racial profiling.  (Id.)  In response to the initial grievance, defendant Dunn upheld the grievance in part and denied the grievance in part.  (Id. at 5).  Defendant Dunn noted that Ansley was transferred to the RHU on January 10, 2021 and received his property on January 20, 2021.  (Id. at 5).  He denied the grievance because there was no evidence that the delay in receiving the property had any impact on Ansley's legal matters, and there was no evidence that any items were missing once he received the property.  (Id.)  Defendant Dunn upheld the grievance as to timeliness and found that there was no explanation as to why the property did not arrive in the RHU until January 20, 2021.  (Id.)  On appeal to the Facility Manager, the initial review response was upheld.  (Id. at 3).  Ansley then submitted an appeal to the SOIGA.  (See id. at 2).  The SOIGA dismissed the appeal based on Ansley's failure to submit the required documentation for a proper appeal to final review.  (Id.)

On March 9, 2021, Ansley filed grievance number 918908 regarding the cell search by defendants Schultz and Martz.  (Doc. 118-6 at 6).  Ansley sought monetary relief and the return of his property.  (Id.)  On initial review, the Grievance Officer

denied the grievance and noted that Ansley received the confiscated paperwork on March 17, 2021, and signed a returned property slip for the items. (Id. at 5). Ansley appealed to the Facility Manager. (Id. at 4). Upon review, the Facility Manager upheld the initial review response and found that the appeal was frivolous because Ansley's signature on the returned property slip indicated that he received the items. (Id. at 3). On final review, the SOIGA dismissed the appeal as untimely and based on Ansley's failure to submit the proper documentation for an appeal. (Id. at 2).

The record clearly demonstrates that Ansley either failed to initiate the grievance process or failed to fully complete the process regarding the remaining issues raised within his complaint. The above-referenced grievances confirm that the claims against defendants Dunn, Weeks, Shultz, and Martz were not properly exhausted. As to defendants Booher, Stavola, Snedden, Brocca-McCoy, and Long, there is no evidence that Ansley filed any grievances related to his claims against these individuals. We must, however, address Ansley's argument that his failure to exhaust should be excused. (Doc. 123).

First, Ansley argues that he was unaware that he could appeal the decision of defendants Booher and Stavola to place him in the RHU. (Doc. 123 at 2, 4, 9). However, at his deposition, Ansley testified that he was familiar with DC-ADM 802

and DC-ADM 804.[6]  (Doc. 129-1 at 33-34, Deposition of Lawrence Ansley ("Ansley Dep."), Notes of Transcript ("N.T.") 33:20-34:2).  He acknowledged that he "know[s] that you have a right, appeal rights" to challenge a PRC decision, but claims he was unaware he could file an appeal while in protective custody.  (Ansley Dep. at 34, N.T. 34:13-15).  Ansley proceeded to testify that he has "never known of anyone appealing a PRC action and it coming to anything."  (Ansley Dep. at 34, N.T. 34:10-20).  Throughout his twenty-six-year incarceration with the DOC, Ansley was clearly aware of the grievance process and the right to appeal a PRC decision.  Ansley may not ignore the exhaustion requirement simply because he regarded exhaustion as futile.  Quite the contrary, it is well-settled that there is no futility exception to the PLRA's exhaustion requirement.  Nyhuis, 204 F.3d at 78.  Despite his awareness of the grievance process, Ansley took no steps to exhaust his claims against defendants Booher and Stavola.

Second, Ansley claims that he submitted ten to twenty grievances alleging that defendant Dunn labeled him a rapist, but was advised that he must pursue the matter through the PREA.  (Doc. 123 at 4-5, 12).  Yet, he provides no evidence of any such grievances or PREA complaint.  The uncontroverted record establishes that Ansley filed grievance numbers 892950 and 893866 concerning his claims against

---

[6] DC-ADM 804 covers general grievances and DC-ADM 802 covers administrative custody procedures.  See PA. DEP'T OF CORR., Nos. DC-ADM 802, 804 available at https://www/cor.state.pa.gov (last accessed August 31, 2023).

defendant Dunn but failed to properly exhaust either grievance.  (Docs. 118-3, 118-4).

Next, Ansley argues that he attempted to challenge the misconduct issued by defendant Long, but "there [was] no available remedy to grieve a falsified misconduct," and staff interfered with his ability to exhaust.  (Doc. 123 at 10-11).  He further asserts that he was denied access to necessary documents in order to exhaust his grievance against defendant Weeks regarding his missing property. (Id.)  Ansley's bald assertions, standing alone, do not carry his burden of proving "that there was some extraordinary reason he was prevented from complying with the statutory mandate."  Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002).[7] Moreover, as stated *supra*, Ansley filed grievance number 911686, relating to his missing property following his transfer to the RHU on January 10, 2021.  (Doc. 118-5 at 6).  It is undisputed that Ansley failed to properly appeal the matter to final review.  (Id. at 2).

Fourth, Ansley asserts that he filed a grievance against defendants Shultz and Martz for confiscating his legal materials "to the highest level 'available' at that time."  (Doc. 123 at 5-6).  While Ansley filed grievance number 918908 regarding the cell search by defendants Schultz and Martz, he failed to properly exhaust the grievance.  (Doc. 118-6 at 6).  Ultimately, the SOIGA dismissed Ansley's appeal of

---

[7]  The court acknowledges that nonprecedential decisions are not binding upon federal district courts.  Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

14

grievance number 918908 as untimely, and because Ansley failed to submit the proper documentation for an appeal to final review.  (Id. at 2).  Ansley fails to submit any evidence of a properly filed grievance, or to refute defendants' exhibits which demonstrate that Ansley failed to timely and properly pursue the matter through all levels of appeal.

Lastly, Ansley appears to argue that he was not required to file a grievance relating to his claims against defendants Snedden and Brocca-McCoy because "[b]oth were made aware that [he] was not safe around [inmate] Almonte."  (Doc. 123 at 9).  He fails, however, to present any evidence in support of his belief that he was not required to pursue this matter through the prison grievance system.

It is undisputed that Ansley failed to properly exhaust all levels of review provided by the inmate grievance system.  Instead, Ansley bypassed the inmate grievance system and proceeded to federal court.  As noted *supra*, "it is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Nyhuis, 204 F.3d at 73.  Ansley's course of action is precisely the conduct that the PLRA administrative exhaustion requirement seeks to curtail.  Defendants are entitled to summary judgment based on Ansley's failure to exhaust administrative remedies.

**IV.**    **Conclusion**

We will grant defendants' motion (Doc. 117) and enter judgment in their

favor.  An appropriate order shall issue.


/S/ Christopher C. Conner
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:        September 1, 2023